UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

David Wayne Eldridge,
        Claimant

        v.                                  Case No. 14-cv-248-SM
                                            Opinion No. 2015 DNH 121

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
        Defendant

**O R D E R**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, David Wayne Eldridge, moves to reverse or vacate the Acting Commissioner's decision denying his applications for Disability Insurance Benefits under Title II of the Social Security Act and Supplemental Security Income Benefits under Title XVI, 42 U.S.C. §§ 423 and 1381-1383c (collectively, the "Act"). The Acting Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Acting Commissioner's motion is granted.

**Factual Background**

I.   Procedural History

In December 2011, claimant filed applications for Disability Insurance Benefits and Supplemental Security Income, alleging that he had been unable to work since November 12, 2008.  Those applications were denied, and claimant requested a hearing before an Administrative Law Judge ("ALJ").

In June 2013, claimant, represented by an attorney, and a vocational expert appeared before an ALJ, who considered claimant's application de novo.  Ten days later, the ALJ issued her written decision, concluding that claimant was not "disabled," as that term is defined in the Act.  Claimant then sought review of the ALJ's decision by the Appeals Council.  His request was denied.  Accordingly, the ALJ's denial of claimant's applications for benefits became the final decision of the Acting Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence.  Claimant then filed a "Motion for Reversal of Commissioner's Denial of Benefits" (document no. 15).  In response, the Acting Commissioner filed a "Motion for an Order Affirming the Decision of the Commissioner" (document no. 17).  Those motions are now ripe.

II.   <u>Stipulated Facts</u>

Pursuant to this court's Local Rule 9.1, the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 18), need not be recounted in this opinion.  Those facts relevant to the disposition of this matter are discussed as appropriate.

**Standard of Review**

I.    "<u>Substantial Evidence" and Deferential Review</u>

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  Factual findings and credibility determinations made by the Commissioner are conclusive if supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g), 1383(c)(3); <u>see also</u> <u>Irlanda Ortiz v. Sec'y of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.  Consolo v. Federal Maritime Comm'n., 383
U.S. 607, 620 (1966); see also Richardson v. Perales, 402 U.S.
389, 401 (1971).

This court's review of the ALJ's decision is, therefore,
both limited and deferential.  The court is not empowered to
consider claimant's application de novo, nor may it undertake an
independent assessment of whether he is disabled under the Act.
Rather, the court's inquiry is "limited to determining whether
the ALJ deployed the correct legal standards and found facts upon
the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31,
35 (1st Cir. 1999).  Provided the ALJ's findings are properly
supported by substantial evidence, the court must sustain those
findings even when there may also be substantial evidence
supporting the contrary position.  See, e.g., Tsarelka v. Sec'y
of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988);
Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222
(1st Cir. 1981).

II.  The Parties' Respective Burdens

An individual seeking Social Security disability and
supplemental security income benefits is disabled under the Act
if he or she is unable "to engage in any substantial gainful
activity by reason of any medically determinable physical or

4

mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); see also 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  See Bowen v. Yuckert, 482 U.S. 137, 146-47 (1987); Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.  See Gray v. Heckler, 760 F.2d 369, 371 (1st Cir. 1985); Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform, in light of her age, education, and prior work experience.  See Vazquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982); see also 20 C.F.R. §§ 404.1512(f) and 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background,

age, and work experience.  See, e.g., Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6 (1st Cir. 1982). Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 423(d)(2)(A) (emphasis supplied); see also 42 U.S.C. § 1382c(a)(3)(B).


With those principles in mind, the court reviews claimant's motion to reverse and the Acting Commissioner's motion to affirm her decision.


## Background - The ALJ's Findings

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. §§ 404.1520 and 416.920.  See generally Barnhart v. Thomas, 540 U.S. 20, 24 (2003).  Accordingly, she first determined that claimant had not been engaged in substantial gainful employment since his alleged onset of disability: November 12, 2008.  Admin.

Rec. at 13.  Next, she concluded that claimant suffers from the following severe impairments: "degenerative changes of the lumbar spine with mild scoliosis, hypertension and obesity."  Id. Nevertheless, the ALJ determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  Id. at 16.  Claimant does not challenge any of those findings.

Then, the ALJ concluded that claimant retained the residual functional capacity ("RFC") to perform the exertional demands of a range of light work.[1]  She noted, however, that he:

> Cannot climb ladders, ropes or scaffolds.  He is
> limited to occasional climbing of ramps and stairs.  He
> can occasionally balance, stoop, kneel, crouch and
> crawl.  He needs to avoid concentrated exposure to
> temperature extremes, hazards and vibration.  He can
> perform uncomplicated tasks for 2-hour[ ] periods
> throughout an 8-hour workday and 40-hour workweek, but
> due to decreased concentration, persistence and pace

---

[1]     "RFC is what an individual can still do despite his or her functional limitations.  RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.  Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis."  Social Security Ruling ("SSR"), 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

> would have decreased production.  This would not be at
> a level greater than 10% below the norm.

Admin. Rec. at 16.  The ALJ also noted that "claimant is unable
to perform any past relevant work."  Id. at 18.


    Finally, at step five of the analysis, the ALJ considered
whether there were any jobs in the national economy that claimant
might perform.  Relying upon the testimony of a vocational expert
("VE"), the ALJ concluded that, notwithstanding claimant's
exertional and non-exertional limitations, and "considering the
claimant's age, education, work experience, and residual
functional capacity, [he] is capable of making a successful
adjustment to other work that exists in significant numbers in
the national economy," including several representative
occupations identified in her order.  Id. at 19.  Consequently,
the ALJ concluded that claimant was not "disabled," as that term
is defined in the Act, through the date of her decision (June 28,
2013).  Id.


## Discussion

    Claimant challenges the ALJ's decision on essentially three
grounds, asserting that she erred by: (1) incorrectly determining
his residual functional capacity; (2) improperly evaluating the

testimony of the VE; and (3) improperly evaluating his age and
work history.


I.   Claimant's Residual Functional Capacity

     Claimant first challenges the ALJ's determination that he
was capable of performing a range of light work, asserting that
the "ALJ failed to give any weight to . . . Mr. Eldridge's
complaints about back, right arm, and knee pain" and
"inappropriately considered the lack of medical treatment when
Mr. Eldridge could not afford ongoing treatment while also
discounting the medical evidence in existence."  Claimant's Mem.
at 6.  He further claims that the ALJ impermissibly "developed an
opinion on RFC on her own," without considering the treating or
consultative physicians' opinions.  Id. at 11.  Consequently, he
claims that the ALJ's RFC determination was not supported by
substantial evidence.  Id.


     In her decision, the ALJ explained that "[a]fter careful
consideration of the entire record," she found that:

     claimant has the residual function capacity to perform
     light work . . . except the claimant cannot climb
     ladders, ropes or scaffolds.  He is limited to
     occasional climbing of ramps and stairs.  He can
     occasionally balance, stoop, kneel, crouch and crawl.
     He needs to avoid concentrated exposure to temperature
     extremes, hazards and vibration.  He can perform
     uncomplicated tasks for 2-hour[ ] periods throughout an
     8-hour work day and 40-hour workweek, but due to
     decreased concentration, persistence and pace he would

>       have decreased production.  This would not be at a
>       level greater than 10% below the norm.

Admin. Rec. at 16.

There is, to be sure, evidence in the record supportive of claimant's assertion that he is disabled.  As he notes, he has pain in his lower back, right arm, and right knee most if not all of the time.  But, it is also clear that the ALJ considered the medical evidence in the record and that substantial evidence exists in the record to support the ALJ's conclusion that he is capable of engaging in substantial gainful activity at the level of light work with the stated limitations.

First, the ALJ adequately supported her conclusion that claimant's subjective complaints of disabling pain were "not entirely credible" because they were "not substantiated by objective medical evidence."  Admin. Rec. at 17.  While claimant testified at the hearing and contends in his brief that he is limited in performing his daily activities and requires assistance, as the ALJ pointed out, on his Function Report dated January 2012, claimant reported that he could "prepare meals, clean, do laundry, rake, drive, shop and manage his own finances. He also reported that he played cards once per week and was able to walk 1/8 of a mile, pay attention for 4 hours at a time and possibly lift 25 pounds," and claimant did not state in the

Report that he needed assistance with these tasks.  Id. (citing
Admin. Rec. Ex. 6E at 6); see Frustalgia v. Sec'y of Health &
Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (providing that
the "credibility determination by the ALJ, who observed the
claimant, evaluated his demeanor, and considered how that
testimony fit in with the rest of the evidence, is entitled to
deference, especially when supported by specific findings.")

     Second, with respect to medical evidence of his back pain,
claimant points to a note that Dr. Jerry Knirk made in September
2012, observing that claimant "has a clinical history that
certainly sounds like it might be consistent with spinal
stenosis," and argues that this note should be sufficient to
establish claimant's disabling back pain in the absence of an
MRI, which he should not be penalized for lacking because he
cannot afford medical care.  However, as the ALJ recognized,
claimant had an MRI in October 2012 that "showed only mild
degenerative changes of the lumbar spine," and "no significant
canal narrowing or identifiable root compression to account for
the claimant's symptoms."  Admin. Rec. at 17 (citing Ex. 10F at
5).  During a later visit claimant made to Dr. Knirk in December
2012, Dr. Knirk noted that claimant "never returned to follow
up," after his diagnostic tests were completed in October.  Id.

Third, claimant points to consultative orthopedist Dr. Matthew Masewic's March 2012 observations as evidence that claimant's right arm and knee pain warrant a finding of disability.  Dr. Masewic noted that there "did appear to be a section of the biceps missing on the right arm likely from a muscular tear that had not been repaired," and he noted a "mild effusion with crepitus in the knee," however, as the ALJ pointed out, there is very little medical evidence in claimant's file regarding his arm and knee pain to support the inference that it is ongoing and disabling.  Admin. Rec. at 17.  Again, claimant argues that the ALJ's observation of deficient medical evidence was improper because claimant lacks funds to obtain treatment.  However, the ALJ pointed to specific occasions on which claimant sought and received medical treatment during which he conspicuously did not complain of pain in his right arm.  For example, claimant did not complain of arm pain to Dr. Knirk when he saw him in 2012 for his back pain.  Nor, as the ALJ noted, was there any evidence of "musculoskeletal impairment or functional limitations" regarding claimant's right arm, knee, or back when claimant was examined in December 2011 at White Mountain Community Health Center to be treated for dizziness and abdominal issues.  Also, the ALJ explained that she afforded Dr. Masewic's initial observation "little weight" because his opinion that "claimant had nerve root compression and spinal stenosis," was

12

ruled out by objective testing — the MRI.  Admin. Rec. at 18.
Therefore, even if the ALJ erred by drawing a negative inference
from claimant's lack of medical treatment, that error would be
harmless, because she provided independent reasons for
determining that claimant was not disabled.  See Campbell v.
Astrue, 596 F. Supp. 2d 446, 454 (D. Conn. 2009).


    Fourth, claimant contends that the ALJ failed to consider
medical evidence that claimant lacked motivation and would have
"attendance problems due to pain."  Claimant's Mem. at 10.  On
the contrary, the ALJ expressly considered the opinion of
consultative psychologist, Dr. Cheryl Bildner, Ph.D., from which
these assertions originated, in making her RFC determination.
Admin. Rec. at 18.  However, the ALJ also stated that she relied
on the medical opinion of Dr. Laura Landerman, Ph.D., who had
reviewed Dr. Bildner's notes.  Admin. Rec. at 18.  Dr. Landerman
specifically stated that she gave "minimal weight" to Dr.
Bildner's "opinion that the claimant is unable to maintain
attendance as well as to sustain attention and concentration"
because she based those opinions on "reported pain," "somatic
impairments are beyond the scope of [the Agency's] psychological
assessment," and, this notwithstanding, Dr. Bildner did not
diagnose claimant with a pain disorder.  Admin. Rec. at 76.
Based on Dr. Landerman's opinion, the ALJ stated that she gave

"little weight" to Dr. Bildner's opinions on these matters. Nonetheless, the ALJ included a limitation in the RFC that claimant's productivity would be reduced by 10% or less "due to decreased concentration, persistence and pace." Admin. Rec. at 16. Claimant complains that this percentage should be higher, but he points to no medical evidence supporting a decrease in his productivity of 20% or more.

In light of the foregoing, the court cannot conclude that the ALJ's credibility determination, her decision to discount claimant's subjective complaints of disabling symptoms, or her RFC determination lack substantial support in the record.

II.  Testimony of the Vocational Expert

Next, claimant asserts that the ALJ improperly ignored testimony of the VE concluding that there would not be jobs available in significant numbers in the national economy for claimant in response to two more restrictive hypotheticals posed, but ultimately rejected, by the ALJ in which claimant's productivity would be at least 20% below the norm, or claimant would have at least two unscheduled absences from work per month on a continuing basis. Claimant's memorandum at 12-13. Again, however, the court is constrained to disagree.

14

As explained above, the hypothetical presented to the VE and ultimately accepted by the ALJ was supported by substantial evidence.  The ALJ rejected the additional hypothetical limitations she posed to the VE, and, as no medical professional actually stated that claimant's productivity would be reduced by 20% or that he would consistently have two or more unscheduled absences from work per month, the ALJ was not required to accept the VE's responses to hypotheticals that contained those restrictions.  See Rossi v. Shalala, 66 F.3d 306 (1st Cir. 1995). Consequently, the court cannot conclude that the ALJ erred in rejecting the opinion of the VE specific to the hypothetical limitations she rejected as inconsistent with the record.

III. Claimant's Age and Work History

Claimant next argues that the ALJ improperly ignored the fact that his age category changed from "younger individual" to "closely approaching advanced age" on June 1, 2009, when he turned 50 years old, and that, as such, the ALJ should have found him "disabled" pursuant to Rule 201.14 of the Medical-Vocational Guidelines.  See 20 C.F.R. §§ 404.1563, 416.963; id. Subpt. P, Appx. 2.

The ALJ specifically recognized that "claimant was born on July 1, 1959, and was 49 years old, which is defined as a younger

individual on the alleged onset date.  He is now 54 years old and
classified as an individual closely approaching advanced age."
Admin. Rec. at 18.  Therefore, she did not ignore claimant's
change in age status.  Further, because the ALJ correctly
concluded that claimant had the residual functional capacity to
perform light work with certain physical and non-physical
limitations, she properly referred to Medical-Vocational Rules
202.21 and 202.14, which apply to individuals capable of light
work (younger and closely approaching advanced age individuals,
respectively), but she also heard testimony from a vocational
expert who concluded that there were jobs in existence in the
national economy for an individual with claimant's age (both
younger and more advanced), education, work experience, and
residual functional capacity.

Rule 201.14 applies to individuals whose residual functional
capacity is limited to sedentary, rather than light, work.
Therefore, it does not apply to claimant, so it cannot be a basis
on which to reverse the decision of the ALJ.

Claimant further contends that the ALJ ignored and failed to
credit claimant's work history of in excess of 35 years of manual
labor, and failed to apply a regulation providing disabled status
to individuals who "have no more than a marginal education (see

16

§ 404.1564) and work experience of 35 years or more during which you did only arduous <u>unskilled</u> physical labor . . . ."  <u>See</u> 20 C.F.R. §§ 404.1562(a), 416.962(a) (emphasis added).  By its terms, the regulation does not apply to claimant.  First, claimant has a high school education.  Pursuant to the regulation, "formal schooling at a 6th grade level or less is a marginal education."  <u>See</u> 20 C.F.R. § 404.1564.  Second, the vocational expert testified that claimant's past work as a farm manager is "skilled work . . . and heavy as performed" by claimant, rather than unskilled work contemplated by the regulation.  Admin. Rec. at 45.

## Conclusion

This court's review of the ALJ's decision is both limited and deferential.  The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether he is disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999).  Provided the ALJ's findings are properly supported by substantial evidence — as they are in this case — the court must sustain those findings <u>even when there may also be substantial evidence supporting the contrary position</u>.  Such is

the nature of judicial review of disability benefit determinations.  See, e.g., Tsarelka v. Sec'y of Health & Human Servs., 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981) ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").

Having carefully reviewed the administrative record and the arguments advanced by both the Acting Commissioner and claimant, the court necessarily concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not "disabled," as that term is used in the Act, at any time prior to the date of her decision (June 28, 2013).  The ALJ's RFC determination and her conclusion that claimant is able to perform light work with certain restrictions are well-reasoned and supported by substantial evidence.

For the foregoing reasons, as well as those set forth in the Acting Commissioner's legal memorandum, claimant's motion to reverse the decision of the Acting Commissioner (document no. 15)

is denied, and the Acting Commissioner's motion to affirm her decision (document no. 17) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

June 12, 2015

cc:  Leslie H. Johnson, Esq.
     Robert J. Rabuck, Esq.

19